16.0485. The people of the state of Illinois claim as appellee the Armando Romero Gutierrez, defendant of color. On behalf of the defendant of color, Mr. Dan E. Miller. On behalf of the plaintiff's appellee, Mr. Stephen A. Fox. Mr. Miller, you may proceed. Good morning, your honors. Counsel may please the court. My name is Darren Miller and I'm with the Office of State Appellate Defender representing Armando Romero Gutierrez and his cause. After a trial by jury, Mr. Gutierrez stands convicted of two counts of predatory criminal sexual assault and eight counts of aggravated criminal sexual abuse. Our position on appeal is that Armando is entitled to a new trial due to ineffective assistance of his trial counsel. At trial, the state sought to impeach its own witness, being Armando's wife, Estella, by calling Investigator Martin from the Child Advocacy Center to impeach Estella after Estella essentially couldn't recall Armando making various admissions to her. Martin testified. The state does not dispute that this evidence was inadmissible, do they? No. I was going to gloss over that, but that's correct, your honor. I don't believe there's any dispute that this is not only admissible as substantive evidence, but was not admissible for impeachment purposes. And really the sole issue here is whether there is prejudice under the sentence promised directly. Does it matter to our analysis that the conversations that were put into evidence were not really detailed confessions? They were basically just kind of a couple quick statements, or it could be quite categorized as that, I guess. You know, that he was going to apologize and that he had done something wrong. Yeah, I know the state made some ado about that in its brief, the distinction between confessions and admissions. No, these are very damning admissions. Martin testified that Estella told him that she confronted Armando at work and that she said to him that she knew what he had done, that she knew that he had touched Amy's butt and breasts. And this is a 12-year-old child at that time. According to Martin, Estella told him that Armando agreed that it had happened and that he had done something stupid. And then on a subsequent date, he later told Estella that he wanted to apologize to Amy's parents. So I don't know, apart from admitting to each element of the crime, I don't know how much more damning admissions can be. She testified she was irate after being informed from her sister about the alleged abuse and confronted him. And he essentially admitted to everything that she confronted him about. So I don't think that it's reasonable to, I believe, the state referred to this evidence as not powerful or vague. And that's, I don't think, a fair characterization. And if you look at the state's case, People v. Ola or Oya, I'm not sure how it's pronounced, but the case that the state moved a supplement on, one thing, one consideration in that case was that in that case, the mother approached the defendant and said, hey, you sexually assaulted my daughter, I'm paraphrasing. And she had three daughters with her. And the defendant looked at the victim and said the victim's name. And apparently, this court deemed that to be an implicit admission that he did something to the daughter. And here you have express admissions that were improperly put before the jury. How about, I'm sorry, go ahead, gentlemen. Can you comment on the strength or the relatively lack of strength of the state's evidence, aside from this improperly admitted evidence that you're alleging was improperly admitted? Yeah. Our contention is not that a rational jury couldn't have found him guilty because A.D. testified that abuse occurred and there were 115 state ten statements from A.D. and the parents testified as the various statements that A.D. made. However, all this testimony is contingent on the credibility of A.D., and that's up to the jury to decide whether A.D. is a credible witness. But also, you take into account that the jurors, I'm sure, took into account that after the meeting with Martinez, he left his long-time employment without informing his supervisor and without picking up his last paycheck. He stayed in a truck for three nights before his brother picked him up, took him to Milwaukee. I mean, isn't that all evidence as well? Sure, that is evidence, but that's not direct evidence that is specifically what occurred here. Right, in addition to the evidence of A.D. Yes, but then in the IPI, the IPI does not recommend an instruction to be given on flight because according to the IPI, flight is just not strong evidence of guilt. So, sure, it can be considered, and it is a fact that a rational jury could have considered, but as far as this evidence being so strong that these highly prejudicial admissions could not have influenced it one way or the other, I don't think that's a fair characterization. Well, a case like Rush talked about the evidence being, or the victim's testimony being equivocal. I mean, this victim was not equivocal. I mean, she testified as to what happened, and she was pretty direct, and you do point out in your brief inconsistencies, but as to the acts themselves, very consistent. Sure, yeah, there were, I believe, three or four inconsistencies in her testimony, but again, I think you have to look at the evidence as a whole, and again, a rational jury could have believed her, and we're not saying that that's not possible, but a rational jury, without the evidence of these statements, also could have found that the state didn't meet the very high burden of proving the defendant's guilt beyond a reasonable doubt. And when you look at some of the other evidence or lack thereof, there were no witnesses attending this abuse. There was no physical evidence, no DNA evidence. She did not immediately report the abuse. Couldn't recall when the touching first started, and as you noted, there were some inconsistencies in her testimony. And given that the state's case, for the most part, is based on A.D.'s word, again, a rational jury did not have to believe A.D. and could have found the defendant not guilty. And for the prejudice pronged strickland, we just have to show there's a reasonable probability that but for the... But for those comments, he would not have been found guilty. That's what you have to prove. A reasonable probability, yes. And another way of stating that is a verdict of not guilty would not be unreasonable. It would not be unreasonable for a jury to have found the defendant not guilty with that evidence pulled out. And I also don't think that this Court should overlook that this was not a fleeting error. The state referred to the admissions as substantive evidence in its opening statement, in its closing statement, in its rebuttal closing, in its closing evidence statement, specifically said it could consider it as substantive evidence. The jury was specifically instructed to consider it as substantive evidence. And importantly, the jury asked for a copy of Martin's interview summary with Estella and the transcripts of Martin's testimony. And Martin is only pertinent here as it relates to the improperly admitted statements and admissions. So clearly the jury here was focused on enough to want the transcripts and the summary of Martin's notes. And I think that's consistent with what kind of goes without saying. If someone says, hey, what did you do to my daughter? You touched my daughter's butt. You touched my daughter's breasts. And instead of saying no, they say, well, yeah, I did, and I apologize. I'd like to apologize. And that's seriously damning evidence against the defendant. And, yeah, whether you categorize it as an admission or a confession is really irrelevant. The importance is that it's very damning evidence. And that's what you don't have also in OLA. That was not an effective assistance counsel case, but it was a plain error case. And there was no trial error in OLA. That was a ZARE violation. So in this case, you have the infusion of highly prejudicial evidence that the state deemed very important at the time of trial. And now that it's on appeal, it's kind of backing off and saying, oh, well, it's not really all that important. And I don't think that the way this case was presented and the way the jury considered this bears out the state's intention on appeal, that this is just minimally prejudicial evidence, given the other evidence in this case. I don't think I have any other points to make right now. No. Thank you. All right. Thank you, Mr. Miller. Any more time for rebuttal argument? Mr. Rogers, you may proceed. Good afternoon, Your Honors. Counsel, may it please the Court. My name is Stephen Rogers, and I represent the people of the state of Oklahoma. Your Honors, as the defense counsel indicated, the issues have pretty much been whittled down into whether the defendant was prejudiced by the admission of two statements he made in a confrontation with his wife the day after A.D. made her initial outcry in this case. Why wasn't this a closed case? Doesn't the state's case seem to rise and fall in testimony of the minor? Your Honor, the state's case was not only A.D.'s testimony, but you have A.D.'s 11510 statements to Pamela Eli. You have her statements to her mother, which, you know, in the run-up cases, when you have two or three years passing, you often get some pretty distinct... Conflicts. Yeah, conflicts. It could be different acts, different places. This is strikingly accurate as time passes. Trial is almost two years after her interview with Pam Eli, and the interview with Pam Eli is anywhere from one to two years after the initial abuse occurred. And she testifies to all the same acts. All the same acts occurred. Any inaccuracies really from the state's perspective were on peripheral issues, whether the door was closed, what exactly the defendant had told her when explaining why she shouldn't disclose, you know, whether it was that he would hurt her family or that it would affect his marriage, which is certainly reasonable with the amount of abuse that occurred. He may have told her different things at different times. The other aspect to it is, and which becomes, people versus olive becomes relevant, is you look at defendant's behavior after he's confronted. And defendant's testimony was actually that, yeah, I was confronted, but she didn't confront me with the specific allegations of abuse. In other words, he wasn't confronted with the fact that he had touched A.D.'s breast or her butt. And with that, defendant leaves a job that he's had for eight years. He doesn't tell his supervisor, doesn't pick up the last check, and leaves for Wisconsin. Now, you can imagine a situation where there's a confrontation with your spouse and you say, well, it's not cool, I have to prevail, I'll take a couple days, maybe stay somewhere else. He leaves. He quits the job. And he actually says, I had to return the truck so she could sell it to support the kids. I mean, that to me, without even his statements, is saying, this is it. I mean, it's kind of just because of guilt, right? Absolutely, Your Honor. And it's not just flight. You know, typically you take a flight and you're running from the police. I think it's more for him is, this is it. I'm not going to be able to work around here or support my family, so the best I can do is turn the truck back over. Wasn't this improper evidence highlighted, though? I mean, counsel pointed out opening statement, closing argument, above all, the trial court's instruction. Well, Your Honor, it was mentioned, no doubt. And I went back and read the closing argument, the opening closing, which was 18 pages. The state does not mention the specific statement. In other words, it doesn't say he said he did something stupid or asked for forgiveness. But the state does say you can take this back and forth into consideration as it pertains to consciousness of guilt. And then in rebuttal, the state does specifically reference each statement, I believe, one time. And the rebuttal argument was 12 pages. Defense counsel also, in closing, which is part of the claim, I guess, is highlighting these statements and why it would be so unreasonable for a defendant to ask for forgiveness for what are pretty horrendous crimes. You know, it wouldn't be reasonable to think, well, I'll just call up the parents and ask for forgiveness if I'm being accused of these crimes. The defense opened it up in closing, and that's why it came out in rebuttal. And then the state responds. And I don't think there's been any argument about the closing argument, but it is all wrapped to some extent. I don't think this is the type of case where this was the linchpin. You know, the state never came out and said he confessed to these crimes. It was more, look, he's confronted, and he pretty much backs away. You also have much of the confrontation would have been in evidence anyways because the defendant's wife did testify that she went to his place of work and confronted him with these allegations. She just couldn't remember what he said. And that's in conflict with defendant's testimony that she didn't confront him with specifically that he had abused A.D. It was more throwing him out of the house, which makes his testimony even more unreasonable that he would have just left to Wisconsin. His wife. Not her mother, his wife. Yes. Yes, Your Honor. I'm sorry. And I'll just reference this court in People v. Filio. It said even where counsel's mistakes are egregious, you still have to examine them in the context of all the evidence in the case to determine whether they create a reasonable probability of a different result. And the state's position is even without those statements, when you take everything else, when you take defendant's denials in light of everything else that was occurring, and then the consistency of A.D.'s trial testimony and our 11510 statements, there's not a reasonable probability that the jury would have reached a different result without these two statements. Thank you. Anything else? No, Your Honor. If Your Honor's have no other questions, the state respects the request that this court affirm defendant's convictions. Thank you, Mr. Rogers. Mr. Miller, a final argument? Just a few quick things. Yeah, flight can be considered for consciousness of guilt, but flight is not only evidence of consciousness of guilt. People even assume going to Milwaukee is flight, which I think is arguable. People flee because they're scared. And a rational jury certainly could find that people run away because they're scared of being in prison, which he actually is right now. I appreciate you offering those possible explanations. What was presented at trial? Did the defense attorney present any ostensible reasons why he took off and went to Milwaukee other than consciousness of guilt? I'm not sure that that was really gotten into. That's the best of my recollection. And opposing counsel says that the versions were strikingly accurate. Well, you also have to consider at the time of trial, this young lady was almost 14 years old, and, of course, she would have been prepared by the state's attorney. So, yeah, you're going to expect a certain amount of consistency when a nearly 14-year-old girl testifies after being prepared as a witness. The consistency, though, also threads through the various statements to the other individuals that took place a couple years before. Yeah, well, as I pointed out earlier, there were some inconsistencies, too, which a jury certainly could have seized on that. Right, they could have. Yeah. But they didn't. And what's our standard of review here? Well, it's a reasonable probability. Right, reasonable probability had this not been infused. And I think it's very difficult to just take out these omissions and just pretend that that never occurred. And most of the cases that find error, basically what we have here, it's word against word. And I guess that's really all I have on this. And with that said, I'd ask that you reverse Armando's conviction and remand for new trial. Thank you, Mr. Miller. Court would thank both attorneys for their arguments here today, and we stand adjourned.